## UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Pinnacle Credit Services, LLC, | Civil File No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| APM Financial Solutions, LLC, Account Portfolio Management, LLC, LMM Management, LLC, Lawrence Weil and Mary Weil, | |
| Defendants. | |

NOW COMES Plaintiff, PINNACLE CREDIT SERVICES LLC ("PCS"), by and through its undersigned attorneys, Michael A. Klutho, Jeffrey D. Klobucar and Bassford Remele, A Professional Association, and as for its complaint against Defendants APM FINANCIAL SOLUTIONS, LLC, ACCOUNT PORTFOLIO MANAGEMENT, LLC, LMM MANAGEMENT, LLC, LAWRENCE WEIL and MARY WEIL (the "Defendants"), states as follows:

### JURISDICTION AND VENUE

1.      PCS is a Minnesota company, with its principal place of business in Minneapolis.

2.      APM Financial Solutions, LLC ("APM Financial") is a Delaware corporation with its principal place of business in Trevose, Pennsylvania.

3.      Account Portfolio Management, LLC ("APM") is a Delaware corporation with its principal place of business in Trevose, Pennsylvania.

4.      LLM Management, LLC ("LMM," together with APM and APM Financial ("the APM Entities")), is a Delaware limited liability company with its principal place of business in Trevose, Pennsylvania.

5.      The Parties agreed pursuant to a Servicing Agreement entered into by them on January 1, 2010 ("Servicing Agreement") that any action brought by any party must be brought in Hennepin County, Minnesota and that Minnesota law would apply.

6.      The matter in controversy exceeds $75,000, exclusive of interest and costs.

7.      This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

8.      Venue lies in this District pursuant to 28 U.S.C. 1391(a), because a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

9.      PCS manages debt collection for its affiliated company Fourscore Resource Capital ("Fourscore").   Fourscore purchases and holds debt from various commercial entities.

10.     The APM Entities are in the debt collection business.

11.     Lawrence Weil ("Weil") is a resident of Pennsylvania. Weil is married to Mary Weil, who is also a resident of Pennsylvania.   (Collectively "the Weils").   On information and belief, Mary Weil is an owner of the APM Entities.

## BACKGROUND

### Collection Process

12.     PCS contracts with third parties to collect debt, as it did with the APM Entities.  PCS provides the third parties certain PCS accounts on which to collect debt. The third parties typically collect the debt directly or engage other third parties, such as attorneys, for collection.  The third party collectors are typically engaged by PCS using servicing agreements like the one at issue in this action.

13.     The debt collection business is highly regulated under both state and federal law.

14.     PCS's typical servicing agreement outlines the duties of third party collectors, which includes the use of a PCS Agency Manual ("Manual"), which outlines the collectors' day-to-day collection activities and obligations under the service agreement. PCS provides its contracted collectors with limited access to a proprietary computer program that allows them to input important information, including collections of debt.

15.     The Manual requires daily computer collection entries and status updates. PCS regularly reconciles the data from its third party collectors.  After each collection account is reconciled, the appropriate collector responsible for that account is paid an agreed-upon amount.

**Relationship with the APM Entities**

16.     PCS entered into a Servicing Agreement with the APM Entities on January 1, 2010,[1] which provides that the APM Entities will undertake collection activities for accounts PCS places for collection with them.

17.     In addition to the APM Entities, the Weils each signed a Joinder to Servicing Agreement ("Joinder Agreement") in which they agreed to be bound, in their personal capacity, to certain provisions of the Servicing Agreement.

18.     Under the Servicing Agreement, APM Financial was to act as an Agency, with primary responsibility for the collection activities, and APM Financial acted on behalf of and in concert with its sister entities, APM and LMM.  At various times, each of APM Entities undertook some aspect of collection activities.

19.     The APM Entities directed collection activities and engaged law firms to pursue collections in Court.

20.     One of the law firms the APM Entities engaged was Oxford Law LLC ("Oxford"), with offices in Trevose, Pennsylvania. On or about the time of this Complaint, Weil was an employee of Oxford.

21.     The APM Entities' duties and responsibilities are specifically detailed in the Servicing Agreement and the Manual that PCS provided the APM Entities.

---

[1] PCS is able and willing to provide the documents referenced herein to the other parties and the Court, however, such documents contain confidential and sensitive business information, so to the extent that they need to be produced, PCS requests that they be produced only under entry of an appropriate protective order or under seal.

22.    For instance, Section 4 of the Servicing Agreement sets forth, among other things, the APM Entities' duties and responsibilities for, among other things, compliance with the Manual, establishing a dedicated trust account for PCS, debtor disputes, settlement, and general legal and regulatory compliance.

23.    Section 4 also specifically provides PCS broad rights to audit the APM Entities' business.

> Agency shall provide PCS, its employees, representatives and agents with identification of and access to Agency's business locations and all operational systems (whether located at such locations or other, remote locations), including immediate, unlimited, unrestricted and unfettered remote electronic access to the Accounts and the Agency's collection systems in order for PCS to review and audit all activity involving the Accounts, the Agency's compliance with this Agreement and the Agency Manual. PCS's right to access and audit its Accounts or any particular Account) shall survive the recall or return of any Account as well as the termination of this Agreement. Agency understands and acknowledges that it shall not claim PCS's rights under this Section 4(B)(v) as a defense to any claim raised by PCS with regard to Agency's performance under this Agreement.

24.    Section 4 is a particularly important provision for PCS.  Without the ability to audit the APM Entities' records, PCS has no way to confirm the accuracy of the consumer information provided to PCS by the APM Entities including consumer payments and related balances.

25.    The APM Entities' duties and responsibilities as required by the Manual include, but are not limited to: 1) posting collection activity daily in the APM Entities' collection system and providing weekly updates to PCS; and 2) notifying PCS promptly (within a week) of any settlements. (Manual, §§ 2.3.1,15.3.8.1.)

26.    The Servicing Agreement also provides clear language regarding grounds for termination. Section 8(B) provides that PCS may terminate the Servicing Agreement for a variety of reasons, including if the Agency (or any of its officers, managers or equity holders):

(i)    (a)    [fails to] timely and accurately remit any payment due PCS;
…
(c)    [fails to] provide PCS with timely and accurate Status updates or Payment Updates; or

(ii)    … [or] any officer, manager, or equity holder of Agency [commits] (a) a felony (or crime involving moral turpitude); (b) theft, conversion, embezzlement, or misappropriation … of funds or other assets of PCS or its Affiliates or any other act of fraud, misrepresentation or dishonesty in any matter related to its obligation under this Agreement, including but not limited to its dealings with and representations to PCS, any Debtor or Debtor's representative or any government agency; (c) intentional, grossly negligent or unlawful misconduct … which causes harm to PCS or any of its Affiliates could reasonably be expected to expose PCS or any of its Affiliates to substantial risk of harm; or (d) any other conduct … that could reasonably be expected to have a material adverse affect on PCS or its Affiliates;

(iii)    … violates any civil or criminal law or regulation.

27.    The Servicing Agreement provides that upon termination, the APM Entities must immediately take a series of actions, including "[1] cease all collection activities and perform certain duties, [2] update all Statuses, [3] submit a list of all scheduled pending Account payments, [4] provide PCS with any and all information and documentation regarding the Account(s) and Account Pool(s) as requested by PCS" and [5] forward to PCS "all Post-Termination Payments [future payments received by either

Party with regard to any Account placed by PCS with Agency] immediately upon Agency's receipt of same [including] an endorsement in favor of PCS on the back of all drafts enabling PCS to deposit the drafts with its financial institution."

28.     Upon termination, the APM Entities are required to immediately return all accounts to PCS and forfeit all fees from any and all future debtor payments.

29.     The Servicing Agreement also mandates forfeiture of all unpaid fees, Contingency fees and Preferred Client fees and the return of the fees to PCS within three days of termination along with all future fees occurring after termination.

30.     Thereafter, PCS provided the APM Entities with various accounts for collection.

31.     In or about 2011, PCS determined that the APM Entities were improperly diverting monies collected for and owed to PCS in excess of $1,000,000.00.

32.     Thereafter, the Weils acknowledged that the APM Entities were in material breach of the Servicing Agreement, including the "repeated failure to timely and accurately remit payments due to PCS." *See* Letter Agreement Dated November 3, 2011 ("Letter Agreement").

33.     The APM Entities and the Weils agreed to pay off the wrongfully diverted payments over time.

34.     In addition, the APM Entities were required to report their collection activity to PCS. Payments received by the APM Entities were deposited into a trust account at Oxford.

35.     At the time PCS learned of the APM Entities' wrongful conversion of monies collected for and due to PCS, PCS withdrew all of PCS's accounts from the APM Entities, except for those accounts where the debtors were actively paying down their debt.  PCS left those accounts with the APM Entities in order not to cause confusion to those debtors already making payments by introducing them to another new entity.

**The Letter Agreement**

36.      In connection with this arrangement, APM Entities and the Weils signed the Letter Agreement, which supplemented the Servicing Agreement and provided for repayment of the wrongfully diverted amounts due to PCS.

37.     The Letter Agreement states that the APM Entities and the Weils must "at all times, be in full compliance with the terms of the Servicing Agreement."

38.     Additionally, the Letter Agreement memorialized the parties' intention that all payments received by the APM Entities would be kept in a trust account, and compensation would be made to the APM Entities only after PCS reconciled the accounts and received all monies owed to it.

39.     One of the primary aims of the Letter Agreement was to facilitate repayment to PCS of the funds the APM Entities and Weil improperly siphoned off.  The Letter Agreement provides that for each amount collected by the APM Entities, PCS is to receive the amount due it under the Servicing Agreement plus an additional sum to pay down the amounts the APM Entities and the Weils owed as a result of their misconduct.

40.     An additional important term in the Letter Agreement was designed to add protection to PCS in the event that there were any further breaches by the APM Entities

and the Weils.  The Letter Agreement obligates the APM Entities and the Weils personally to reimburse PSC for "all fees, costs and expenses (including reasonable attorney's fees), incurred in connection with the enforcement of this letter agreement and/or the Servicing Agreement."

41.     In February 2015, PCS's General Counsel received a writ of garnishment judgment and summons seeking to garnish funds due the APM Entities.  The garnishment arose from a suit by an attorney against Oxford over Oxford's non-payment of attorney's fees.  PCS had placed some money due the APM Entities into an escrow account in response to this writ of garnishment judgment.

42.     Thereafter, on or around March 26, 2015, PCS determined that accounts for which the APM Entities were collecting payments did not reconcile, and that the APM Entities and Weil were once again diverting funds owed to PCS.

43.     In an April 2, 2015, email exchange with Rob Castle, PCS's Chief Operating Officer, Weil admitted he had withheld these funds without notice or approval. Weil claimed that he had made this latest diversion of funds because he opposed the placement of the APM funds in escrow.

44.     Given this non-compliance with the Servicing Agreement and Letter Agreement and the APM Entities' past history of wrongful diversion, PCS has strong reason to believe that the APM Entities are again wrongfully and improperly diverting monies associated with the accounts the APM Entities service. The full extent of the APM Entities' diversion and fraud is unknown, and cannot be determined without an audit by PCS of the AMP Entities' records.

**April 15 Demand Letter**

45.     On or about March 31, 2015, PCS demanded that the APM Entities electronically return PCS's accounts.  PCS received no response from the APM Entities or Weil.

46.     As a result, on April 1, 2015, PCS itself pulled back its accounts from the APM Entities.  PCS recalled approximately 408 accounts from the APM Entities.

47.     On April 15, 2015 PCS's counsel sent a letter to the APM Entities and Weil.[2]   In the letter, and pursuant to the terms of the Servicing Agreement, PCS terminated the Servicing Agreement with the APM Entities for breaching the agreement, by, among other things, intentionally withholding and not remitting payment to PCS. The letter also demanded that the APM Entities comply with its obligations with respect to PCS audit rights in the Servicing Agreement, and that any payments made to the APM Entities after April 1, 2015 be returned to PCS via a next day delivery.

48.     In addition to the foregoing, PCS also demanded that APM Entities provide the following information to PCS by 12:00 (EPT) on April 17, 2015:

- Identify each and every instance since October 2011 in which APM received any payments due and owing to PCS, irrespective of whether you or APM properly caused the sum to be entered into the WinDebtXL SQL Collection and Debt Management System ("Windebt") as required (Servicing Agreement at 8D and 4(B)(i), and Letter Agreement);

---

[2] The April 15 letter was also to Robert Kline and Meetu Dabral, principals of Oxford Law LLC.

- Identify each and every instance since October 2011 in which you, APM, its affiliates and their respective sub-servicers, including Oxford Law, have diverted and/or failed to fully remit all payments due and owing to PCS (Servicing Agreement at 8D and 4(B)(i), and Letter Agreement);

- Remit all gross funds due to PCS irrespective of whether the funds did (sic) or did not go into a checking account controlled by Oxford Law (Servicing Agreement at 8D and 4(B)(i), and Letter Agreement);

- Update all account status codes (Servicing Agreement at 8D and 4(B)(i), and Letter Agreement);

- Provide a list of all PCS accounts that are payers (defined as those that have payment plans in place), along with updated addresses, phone number and collector notes with respect to each account (Servicing Agreement at 8D and 4(B)(i), and Letter Agreement);

- Permit PCS to confirm that all PCS accounts, including payers, are closed on the APM WinDebt system (Servicing Agreement at 8D, 4(B)(i), 4(B)(v), and Letter Agreement);

- Provide with respect to all PCS accounts; a statement of all future post-dated checks, payment arrangements and mutli-part settlement arrangement (including date, amount and method of payment ([i.e. credit card, ACH]) (Servicing Agreement at 8D and 4(B)(i), and Letter Agreement);

- Provide a list of all PCS accounts with respect to which APM has any indication whatsoever that the account is uncollectible due to an account obligor claiming the account to be fraudulent or APM having received a cease and desist notice with respect to the account (Servicing Agreement at 8D and 4(B)(i), and Letter Agreement);

- Provide a list of all PCS accounts with respect to which Oxford Law has commenced litigation on behalf of PCS as well as a list of all existing debtor lawsuits, threatened litigation and complaints and judgment documents involving PCS accounts (Servicing Agreement at 8D and 4(B)(i), and Letter Agreement).

49.     Each of the foregoing is a clear contractual obligation of defendants. As of the date of this complaint, Defendants have failed to respond to the April 15 letter.

50.     As a result, the APM Entities and the Weils have actively prevented PCS from determining by an audit or through other communications with the APM Entities:

   a.   What the true status is of the payments on the 408 accounts;

   b.   Whether the APM Entities are complying with federal and state debt collection laws in relation to PCS's accounts.

51.     Without being provided access to the APM Entities' computer systems, PCS cannot reconcile and validate the status of the debtors' payments on their accounts.

52.     Based on the information PCS has reviewed to date on the accounts it was able to pull back, there are significant discrepancies in a number of the accounts giving

PCS great concern as to the full extent of the improper actions that the APM Entities took (and may be taking) with respect to the accounts.

53.     Because PCS is being denied the ability to confirm that it has accurate, up-to-date information on the accounts, PCS is thus left in the position of being forced to mark down all balances which consumers dispute whether or not the individual consumer's dispute has any legitimate basis, as well as likely forego collections altogether on certain accounts.

54.     The 408 accounts currently have a market value of over $4,000,000.

## COUNT I – Breach of Contract
### *(The Servicing Agreement)*

55.     PCS incorporates and realleges Paragraphs 1-54 as if fully set forth herein.

56.     The Servicing Agreement is a valid and binding contract.

57.     PCS has fully performed its obligations under the Servicing Agreement, by directing distribution to the APM Entities of the amounts owed, at the time they are owed, and in a timely fashion.

58.     The APM Entities have breached the Servicing Agreement by refusing to provide information related to the accounts placed for collection with the APM Entities and the APM Entities' collection activities, pursuant to Section 4(B)(v) of the Servicing Agreement.

59.     The APM Entities have also failed to timely and accurately remit payment due to PCS, pursuant to Section 8(B) of the Servicing Agreement.

60.     APM Entities have also failed to timely and return all accounts to PCS upon termination of the Servicing Agreement, pursuant to Section 8(C) of the Servicing Agreement.

WHEREFORE, Plaintiff, Pinnacle Credit Services, prays that this Court enter judgment in its favor and against the Defendants, APM Financial Solutions, LLC, Account Portfolio Management, LLC, LMM Management, LLC, Lawrence Weil and Mary Weil for monetary damages, attorneys' fees, costs, and for any other relief this Court deems appropriate.

**COUNT II – Breach of Contract**
*(The Letter Agreement)*

61.     PCS incorporates and realleges Paragraphs 1-54 and 55-60 as if fully set forth herein.

62.     The Letter Agreement is a valid and binding contract.

63.     PCS has fully performed its obligations under the Letter Agreement, by directing distribution to the APM Entities of the amounts owed under the modified terms of the Letter Agreement, at the time they are owed, and in a timely fashion.

64.     By breaching the Servicing Agreement, the APM Entities have breached the Letter Agreement, by failing to "be in full compliance with the terms of the Servicing Agreement."

65.     Under the Letter Agreement, PCS is entitled to its fees, costs, and expenses, including reasonable attorneys' fees, it has incurred in enforcing the Letter Agreement and the Servicing Agreement.

WHEREFORE, Plaintiff, Pinnacle Credit Services, prays that this Court enter judgment in its favor and against the Defendants, APM Financial Solutions, LLC, Account Portfolio Management, LLC, LMM Management, LLC, Lawrence Weil, and Mary Weil for monetary damages, attorneys' fees, costs, and for any other relief this Court deems appropriate.

## COUNT III – Specific Performance of Contract

66.     PCS incorporates and realleges Paragraphs 1-54, 55-60, and 61-65 as if fully set forth herein.

67.     The Servicing Agreement is a valid and binding contract, and its terms are fair and reasonable.

68.     The APM Entities were not induced into entering the Servicing Agreement by mistake, misrepresentation, or any other wrongful means.

69.     Pursuant to Section 4(B)(v) of the Servicing Agreement, PCS has a right to audit and access the APM Entities' systems and accounts, including "immediate, unlimited, unrestricted and unfettered remote electronic access to the Accounts and the Agency's collection systems."

70.     PCS's April 15, 2015 letter requested information necessary for PCS to audit the APM Entities' account and collection activities undertaken on PCS's behalf, but the APM Entities have not responded.

71.     Given the highly sensitive and regulated nature of debt collection practices, PCS has a particularized need to immediately audit the APM Entities' activities on its behalf to ensure PCS at all times remains compliant with all its obligations.

72.    Given the highly sensitive and regulated nature of debt collection practices, PCS's inability to audit the APM Entities' activities cannot be compensated in damages.

73.    It would not cause unreasonable hardship or loss to the APM Entities to require them to provide information to PCS and allow PCS to audit APM Entities' systems and accounts for the collection activities the APM Entities performed on PCS's behalf.

WHEREFORE, Plaintiff, Pinnacle Credit Services, prays that this Court enter judgment in its favor and against the Defendants, APM Financial Solutions, LLC, Account Portfolio Management, LLC, and LMM Management, LLC, and order that APM Entities submit to an audit by PCS and provide any information necessary for PCS to conduct an audit and review of APM Entities systems and accounts, and for any other relief this Court deems appropriate.

## COUNT IV – Conversion

74.    PCS incorporates and realleges Paragraphs 1-54, 55-60, 61-65, and 66-73 as if fully set forth herein.

75.    Under the Servicing Agreement and later Letter Agreement, the APM Entities were required to remit the amounts due to PCS upon PCS's reconciliation of the accounts and at PCS's direction.

76.    PCS is entitled to the amounts it is due under the Servicing Agreement and Letter Agreement.

77.    The APM Entities have failed to provide PCS with the full amounts it is owed.

78.     The APM Entities have wrongfully retained amounts due to PCS.

79.     In light of the APM Entities' failure to provide an accounting and information upon PCS's request, PCS is unable to ascertain the full amounts the APM Entities have converted.

80.     Further, given the APM Entities' prior history of admitted breaches of the Servicing Agreement, as admitted to in the Letter Agreement, PCS has reason to believe that the APM Entities' have retained far more than the amount PCS is aware of.

WHEREFORE, Plaintiff, Pinnacle Credit Services, prays that this Court enter judgment in its favor and against the Defendants, APM Financial Solutions, LLC, Account Portfolio Management, LLC, and LMM Management, LLC for monetary damages, attorneys' fees, costs, and for any other relief this Court deems appropriate.

## COUNT V – Civil Theft
### *(Pursuant to M.S.A. § 604.14)*

81.     PCS incorporates and realleges Paragraphs 1-54, 55-60, 61-65, 66-73, and 74-80 as if fully set forth herein.

82.     Under the Servicing Agreement and later Letter Agreement, the APM Entities were required to remit the amounts due to PCS upon PCS's reconciliation of the accounts and at PCS's direction.

83.     PCS is entitled to the amounts held by the APM Entities under the Servicing Agreement and Letter Agreement, and because PCS is the holder of the indebtedness for which the APM Entities have received the payments.

84.     The APM Entities have failed to provide PCS with the full amounts it is owed.

85.     The APM Entities have wrongfully retained amounts due to PCS.

86.     Therefore, the APM Entities are in wrongful possession of, and have stolen, PCS's property.

87.     In light of the APM Entities' failure to provide an accounting and information upon PCS's request, PCS is unable to ascertain the full amounts the APM Entities have converted.  Further, given the APM Entities' prior history of admitted breaches of the Servicing Agreement, as admitted to in the Letter Agreement, PCS has reason to believe that the APM Entities' have retained far more than the amount PCS is aware of.

WHEREFORE, Plaintiff, Pinnacle Credit Services, prays that this Court enter judgment in its favor and against the Defendants, APM Financial Solutions, LLC, Account Portfolio Management, LLC, and LMM Management, LLC for monetary damages, attorneys' fees, costs, and for any other relief this Court deems appropriate, plus punitive damages as provided for in M.S.A. § 604.14.

## COUNT VI – Unjust Enrichment

88.     PCS incorporates and realleges 1-54, 55-60, 61-65, 66-73, 74-80, and 81-87 as if fully set forth herein.

89.     Count V is plead in the alternative to Counts I and II.

90.     The APM Entities have knowingly received amounts which are rightfully due PCS under the Servicing Agreement and Letter Agreement, and because PCS is the holder of the indebtedness for which the APM Entities have received the payments.

91.     The APM Entities have accepted these payments on the indebtedness held by PCS, but have refused to pay the amounts due to PCS.

92.     It would be wrong and inequitable to allow the APM Entities to keep the amounts to which PCS is entitled.

WHEREFORE, Plaintiff, Pinnacle Credit Services, prays that this Court enter judgment in its favor and against the Defendants, APM Financial Solutions, LLC, Account Portfolio Management, LLC, and LMM Management, LLC for monetary damages, attorneys' fees, costs, and for any other relief this Court deems appropriate.

## COUNT VII – Injunctive Relief

93.     PCS incorporates and realleges 1-54, 55-60, 61-65, 66-73, 74-80, 81-87, and 88-92 as if fully set forth herein.

94.     Under Section 8(C) of the Servicing Agreement, the APM Entities are obligated to immediately return all accounts to PCS upon termination of the Servicing Agreement.

95.     After the accounts have been returned to PCS, the APM Entities have no right under the Servicing Agreement, and no other right or basis, to continue collection on PCS's behalf or to receive payments on the indebtedness held by PCS.

96.     Furthermore, after termination of the Servicing Agreement, the APM Entities have no right, basis, or authority to act or purport to act on behalf of PCS for any reason.

97.     The APM Entities have not confirmed that they have ceased collection efforts on PCS's behalf, and have not communicated with PCS in any way in response to PCS's April 15, 2015 letter terminating the Servicing Agreement.

98.     Thus, PCS has no ability to control, supervise, direct, or review the APM Entities' activities, and ensure that the APM Entities are no longer acting on PCS's behalf.

99.     Given the highly sensitive and regulated nature of debt collection activities, PCS could suffer great and irreparable injury if it or any collection efforts undertaken on its behalf fail to comply with any of its legal obligations.

100.    Given the highly sensitive and regulated nature of debt collection activities, the injuries PCS will suffer if the APM Entities continue to act on PCS's behalf or collect on PCS's accounts cannot be compensated by damages.

WHEREFORE, Plaintiff, Pinnacle Credit Services, LLC, prays that this Court enter judgment in its favor and against the Defendants, APM Financial Solutions, LLC, Account Portfolio Management, LLC, and LMM Management, LLC, and order that APM Entities be: 1) prohibited from any collecting on any PCS accounts, 2) prohibited from acting or purporting to act on behalf of PCS, 3) prohibited from receiving, retaining, diverting or otherwise disposing of any payments received on PCS accounts, and 4)

directing that they provide PCS full access to its records, accounts, and systems for audit purposes.

Respectfully submitted,

**BASSFORD REMELE,**
*A Professional Association*

Dated: July 1, 2015          By:   *s/Michael A. Klutho*
                                   Michael A. Klutho (#186302)
                                   Jeffrey D. Klobucar (#389368)
                                   33 South Sixth Street, Suite 3800
                                   Minneapolis, Minnesota 55402-3707
                                   Telephone:   612-333-3000
                                   Facsimile:    612-333-8829
                                   mklutho@bassford.com
                                   jklobucar@bassford.com
                                   *Attorneys for Plaintiff*