UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Pinnacle Credit Services, LLC,  Case No. 15cv2917 (PAM/KMM)

     Plaintiff,

v.  **MEMORANDUM AND ORDER**

APM Financial Solutions, LLC,
Account Portfolio Management, LLC,
LMM Management, LLC, Lawrence Weil,
and Mary Weil,

     Defendants.
_____

  This matter is before the Court on Plaintiff's Motion for Default Judgment. For the following reasons, the Motion is granted in part and denied in part.

**BACKGROUND**

  Plaintiff Pinnacle Credit Services, LLC ("Pinnacle") manages the debt collection for its affiliate company Fourscore Resource Capital ("Fourscore"). (Compl. (Docket No. 1) ¶ 9.) Pinnacle contracts with third-party debt collectors like Defendants APM Financial Solutions, LLC, Account Portfolio Management, LLC, and LMM Management, LLC (collectively, the "APM Entities"), who directly recover debt or hire law firms to do so. (Id. ¶ 12.)

  On January 1, 2010, Pinnacle and the APM Entities entered into a Servicing Agreement, under which the APM entities agreed to undertake collection activities for some of Pinnacle's accounts. (Id. ¶ 16.) Pinnacle would then pay the APM Entities a fee based on the amount of debt that the APM Entities recovered. (Id. ¶ 15; see also Castle

Aff. Ex. A (Docket No. 80-1) ¶ 3(A).) Defendants Lawrence and Mary Weil, the owners of the APM Entities, also signed a joinder to the Servicing Agreement, in which they agreed to be personally bound to certain provisions. (Id. ¶¶ 11, 17.)

Under the Servicing Agreement, the APM Entities agreed to collect both principal and interest on all the accounts that Pinnacle placed with the APM Entities for collection. (Castle Aff. Ex. A ¶¶ 1, 2(A).) The APM Entities also agreed to post collection activity in their computer collection system on a daily basis, provide weekly updates to Pinnacle, and notify Pinnacle promptly of any settlements. (Compl. ¶ 25.)

In 2011, the APM Entities breached the Servicing Agreement by improperly diverting over $1,000,000 collected for and owed to Pinnacle. (Id. ¶ 31.) After Pinnacle discovered the breach, Pinnacle withdrew all of Pinnacle's accounts from the APM Entities, except those in which the debtors were actively paying down their debts. (Id. ¶ 35.) In response to the breach, Pinnacle, the APM Entities, and the Weils entered into an additional Letter Agreement, in which the APM Entities and the Weils acknowledged their wrongdoing and agreed to repay the wrongfully diverted funds and keep all received payments in a trust account. (Id. ¶ 36-40.) The Letter Agreement also reiterated the APM Entities' obligations to report all of their collection activity to Pinnacle and remain in compliance with the Servicing Agreement at all times. (Id.) The Weils additionally agreed to personally reimburse Pinnacle for all fees, costs, and expenses, including reasonable attorney's fees, incurred in connection with enforcing the Letter Agreement and Servicing Agreement. (Id. ¶ 40.)

On March 26, 2015, the APM Entities once again diverted funds owed to Pinnacle. (Id. ¶ 42.) On April 1, 2015, Pinnacle pulled back the remaining 408 accounts from the APM Entities after the APM Entities failed to respond to Pinnacle's demand to return the accounts. (Id. ¶ 46.) On April 15, 2015, Pinnacle terminated the Servicing Agreement because of the breach. (Id. ¶ 47.)

On July 1, 2015, Pinnacle filed this lawsuit against the APM Entities and the Weils (collectively, "Defendants"), alleging that Defendants breached the Servicing Agreement and Letter Agreements. Pinnacle served Defendants with a copy of the Summons and Complaint, and when Defendants failed to answer, the Clerk entered a default against Defendants on September 10, 2015. (Docket No. 18.)

On September 15, 2015, the Court granted Pinnacle's motion for partial default judgment on its claims for injunctive relief and ordered Defendants to submit to an audit so Pinnacle could determine the amount of its damages. (Docket No. 26.) As the audit progressed, Pinnacle found various discrepancies between Defendants' and Pinnacle's records including Defendants' failure to collect interest on the accounts and to maintain accounting records adequate to be able to determine accurate balances on the accounts. (Castle Aff. (Docket No. 80) ¶ 30.) In addition, consumer debtors indicated that Defendants' computer collection system did not maintain accurate balances on their accounts. (Id. ¶ 38; see also Castle Aff. Ex F (attaching letters from debtor detailing the discrepancies between Defendants' computer collection system and the accurate amount of debt he owed).) As a result of these discrepancies, Pinnacle ceased collection efforts on all accounts it had assigned to Defendants because continuing to attempt to collect

3

debt without accurate records would expose Pinnacle to liability under the Fair Debt Collection Practices Act. (Id. ¶¶ 40-41.)

Pinnacle now moves for a final default judgment and requests that the Court enter a damages award in the amount of $2,491,901.75. (Pl.'s Supp. Mem. (Docket No. 78) at 15.) This figure reflects the principal and interest that Pinnacle would have received had Defendants fully performed under the Servicing and Letter Agreements, less the fees that Defendants would have been owed for their collection services. (Id.) Pinnacle also requests an attorney's fee award in the amount of $181,983.91. (Id.)

**DISCUSSION**

**A.    Damages**

"Once a default has been entered on a claim for an indefinite or uncertain amount of damages, 'facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding.'" Cutcliff v. Reuter, 791 F.3d 875, 882 (8th Cir. 2015) (quoting Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001)). Although the parties initially scheduled an evidentiary hearing to determine the amount of damages, they later agreed to forego the hearing, and the Court concluded that Pinnacle's Motion could be considered on the parties' submissions. See id. ("The necessity of an evidentiary hearing to determine a plaintiff's damages is committed to the sound discretion of the district court.") Under Minnesota law, "the appropriate measure of damages for breach of contract is that amount which will place the plaintiff in the same situation as if the contract had been

performed." Peters v. Mut. Benefit Life Ins. Co., 420 N.W.2d 908, 915 (Minn. Ct. App. 1988).

To prove its expectation damages, Pinnacle submits the affidavit of Rob Castle, the former Chief Operating Officer of Fourscore, Pinnacle's affiliate company, and an accompanying spreadsheet that lists each account Pinnacle placed with Defendants for collection, the amount of principal owed on each account, the amount of interest owed on each account, and Defendants' prospective fees. (Castle Aff.; Castle Aff. Ex. G.) Castle indicates that Defendants failed to collect $2,326,684.07 in principal and $2,039,045.39 in interest on the 408 accounts that Defendant contracted with Pinnacle to collect, totaling $4,365,729.46. (Castle Aff. ¶ 48.) If Defendants had properly collected on the accounts, Pinnacle calculates that Defendants would have been entitled to $1,873,827.71 in fees for their collection services. (Castle Aff. Ex. G at 11.) Subtracting Defendants' fees from the total amount of principal and interest that Defendants should have collected had they performed under the Servicing and Letter Agreements equals $2,491,901.75. (Id.) This is the amount of damages that Pinnacle seeks.

Defendants do not contend that Pinnacle miscalculates these amounts. Instead, Defendants argue that (1) Pinnacle's expectation that the APM Entities would have collected 100% of the outstanding principal and interest is too speculative, remote, and conjectural; and (2) interest should not be included in the damages award because interest constitutes special and consequential damages.

### 1. 100% Collection

Defendants first argue that Pinnacle's expectation that the APM entities would have collected 100% of the outstanding principal and interest is too speculative, remote, and conjectural. Of course, "damages which are speculative, remote, or conjectural are not recoverable." Brown v. Diversified Distribution Systems, LLC, 801 F.3d 901, 910 (8th Cir. 2015) (quotations and citation omitted). But Pinnacle's alleged damages are not remote, speculative, or conjectural. In fact, Pinnacle can identify—down to the cent—the amount it expected Defendants to recover under the Servicing and Letter Agreements. (See Castle Aff. Ex. G at 11.)

Although Defendants attempt to cast their argument as one challenging allegedly speculative damages, what Defendants really argue is that it would have been impossible for them to collect 100% of the principal and interest on the accounts in question. (See Defs.' Opp'n Mem. (Docket No. 81) at 6-8 ("[Pinnacle]'s calculation fails to take into consideration a number of relevant and reasonably foreseeable events that would have prevented the APM Entities from collecting 100% . . . . [These accounts] are extremely difficult to collect . . . . [I]t is never guaranteed that 100% of an outstanding balance can be collected.").) Defendants also submit the affidavit of Daniel Pineda, an expert in the consumer debt collection industry, who opines that Defendants would have only collected 3-5% of the principal and interest on the accounts. (Pineda Aff. (Docket No. 82) ¶ 10.)

But the doctrines of impossibility and frustration of purpose are affirmative defenses that challenge a party's liability. See Winthrop Resources Corp. v. Anastasi Const. Co., Inc., No. 01cv787, 2002 WL 523877, at *4 (D. Minn. 2002) (Magnuson, J.).

If Defendants had a legitimate defense that it was impossible to collect 100% of the principal and interest on the assigned accounts, Defendants should have answered Pinnacle's Complaint and raised impossibility as an affirmative defense at that time. At this stage of the litigation, the Court only determines the "accuracy of the amounts found owing under the audit," not whether Defendants have any affirmative defenses. See Nali v. MaxPro Flooring, LLC, No. 09cv3625, 2013 WL 673779, at *6 (D. Minn. February 25, 2013) (Davis, C.J.) (declining to address the affirmative defenses of res judicata and collateral estoppel on a motion for default judgment). Having defaulted on the issue of liability, Defendants cannot now raise their affirmative defenses as challenges to damages.

### 2. Interest

Defendants next argue that the interest they were required to collect under the Servicing and Letter Agreements should not be included in the damages calculations because the interest constitutes unforeseeable consequential damages. Consequential damages are damages which "do not arise directly according to the usual course of things from the breach of the contract itself, but are rather those which are the consequence of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made." Kleven v. Geigy Agric. Chem., 227 N.W.2d 566, 569 (Minn. 1975) (quoting Despatch Oven Co. v. Rauenhorst, 40 N.W.2d 73, 79 (Minn. 1949)). In contrast, direct damages are damages that "arise out of the breach itself." Id.

The interest Defendants were required to collect under the Servicing and Letter Agreements are direct damages, not consequential damages. Defendants' obligation to

7

collect interest on the accounts Pinnacle placed with Defendants for collection was clearly and explicitly contemplated in the Servicing and Letter Agreements. (Castle Aff. Ex. A ¶¶ 1, 2(A).)

Although Defendants again attempt to cast their argument as one related to damages, what they are really arguing is that it was impossible for them to collect interest on the accounts because Pinnacle "continuously failed to advise of the different interest rates applicable to the different accounts placed with the APM Entities," and Pinnacle waived its right to collect interest because "[t]he business records of the APM Entities show that [Pinnacle] consented to and was aware of the APM Entities' practice not to accrue interest." (Defs.' Opp'n Mem. at 9-10.) As previously discussed, Defendants impossibility argument is an affirmative defense that challenges liability and is inappropriate to address after Defendants have defaulted. Likewise, waiver is an affirmative defense that also challenges Defendants' liability rather than the facts that relate to the amount of damages. See Residential Funding Co., LLC v. Terrace Mortg. Co., 725 F.3d 910, 918 (8th Cir.) (citation omitted).

As above, if Defendants wanted to make these arguments, they should have answered Pinnacle's Complaint and raised them then. Having failed to challenge in any other way the facts related to the amount of Pinnacle's alleged damages, Pinnacle is entitled to its full damages request of $2,491,901.75.

**B.     Attorney's Fees**

Under the Letter Agreement, Defendants must pay Pinnacle's reasonable attorney's fees. (Compl. ¶ 40.) Pinnacle requests $181,983.91 in attorney's fees. This

8

amount does not include fees incurred by local counsel or fees incurred in connection with Pinnacle's opposition to Defendants' motion for an order to hold an evidentiary hearing to determine damages. (Aizenberg Decl. (Docket No. 79) ¶¶ 5-7.) Pinnacle also claims that its attorneys self-reduced their fees by 33% and billed at substantial discounts from their normal billable rates. (Id.)

To determine whether Pinnacle's attorney's fees are reasonable, the Court considers several factors including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983).

Based on these factors, Pinnacle's request for attorney's fees is unreasonable. To be sure, Pinnacle's attorneys' hourly rates are reasonable in comparison to the rates of attorneys with similar levels of experience at law firms of similar size and stature. But the number of attorneys and the amount of time that those attorneys spent on this default-judgment case is unreasonable. Even excluding local counsel, Pinnacle had three shareholders, two associates, and one paralegal working on this case. Before filing the Complaint, some of these individuals had billed more than 129 hours of work for a total $85,594.77 in fees. (Aizenberg Decl. Ex. F.) That amount of attorney's fees to prepare "a straightforward breach of contract dispute" is absurd. (Pl.'s Opp'n Mem. (Docket No.

9

66) at 1.) Although the Court reiterates that Defendants were evasive in failing to follow through with any of the parties' negotiated agreements, the attorney's fees Pinnacle amassed conducting the Court-ordered audit and filing a motion for default judgment are simply far too great. The Court will therefore reduce Pinnacle's request for attorney's fees by 50% and award Pinnacle $90,991.95 in attorney's fees.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Pinnacle's Motion for Default Judgment (Docket No. 75) is **GRANTED in part and DENIED in part** and Pinnacle is awarded $2,491,901.75 in damages and $90,991.95 in reasonable attorney's fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 31, 2017	*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge